BANK v. RAULAND CORPORATION et al.

No. 8544.

Circuit Court of Appeals, Seventh Circuit.
Dec. 20, 1944.

H. Howard Jonesi and Casper W. Ooms, both of Chicago, Ill., for appellant.

Paul Kolisch, of New York City, and J. Bernard Thiess, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

The complaint charged the defendants with infringement of United States patent No. 1,922,415 to Bank, issued August 15, 1933, on an application filed March 25, 1929. The defendant corporation was charged as a direct infringer, and Rauland, the general manager of that corporation, was charged as an aider, abetter and contributor thereto. The defendants denied infringement, and by counterclaim sought a decree declaring the claims invalid. The District Court found the facts specially and stated its conclusions of law thereon, holding each claim invalid and not infringed. Judgment was rendered accordingly and the complaint was dismissed for want of equity, and from that decree this appeal is prosecuted.

The patent relates to electrical-including radio-apparatus, otherwise commercially known as a two-way loud speaking intercommunication system. Only three claims were allowed and they are all relied upon. As the court held each claim invalid for lack of the required statutory specification, we set them forth in the margin.[1]

This is a combination patent and all the elements were old in the art. The object of the invention is to provide a system in which a plurality of loud speaking reproducers are used at respective stations, and are so united that any one may be selectively used either as a transmitter or a reproducer. The structure consists of two or more loud speaking reproducers, an amplification apparatus, a transformer of predetermined capacity in an amplification stage, and a multipole switch.

The reproducer consists of an electrical device which can generate electrical energy, which device is connected to a diaphragm. When used as a transmitter to speak into, it then is a generator of electrical waves. When used as a loud speaking receiver, it is a generator of sound waves. When used as a transmitter, its function is to convert the sound waves originated when one talks, into electrical energy, which sound waves can be guided as desired over the connecting wires through the amplifier to the reproducer used as a loud speaking receiver, where electrical energy causes its diaphragm to vibrate and there is thus translated into amplified sound waves similar in nature to those which are put into the reproducer when used as a transmitter. When the reproducer previously used as a loud speaking receiver is converted to be used as a transmitter, the same cycle of events takes place. Sound waves impressed on this transmitting reproducer are converted into electrical energy which travels over the wires to the loud speaking receiver at the other end of the line, which in turn converts the electrical energy back into sound.

[1] Claim 1. In an apparatus of the character described, the combination of a plurality of loud speaking reproducers in circuit and an amplification apparatus in said circuit adapted to receive input fluctuations from one reproducer and deliver amplified fluctuations to another, said amplification apparatus including a transformer in an amplification stage provided with a predetermined capacity for preventing the building up of a capacity between the primary and secondary of said transformer and for permitting the efficient operation of said reproducer as a transmitter.

Claim 2. In an apparatus of the character described, the combination of a plurality of loud speaking reproducers in circuit and means associated with said circuit including a multi-pole switch whereby one reproducer may be selectively used to transmit to as well as receive from another reproducer and vice versa, said switch being so connected that its adjacent blades are connected to separate reproducers whereby the capacity that would otherwise be built up in said switch is reduced.

Claim 3. In an apparatus of the character described, the combination of a plurality of loud speaking reproducers in circuit, amplifier means in said circuit, and a multi-pole switch so connected with respect to said reproducers and means that it may be actuated to selectively connect one reproducer to the input of said means and another reproducer to the output thereof and vice versa, said switch being so connected that its adjacent blades are connected to separate reproducers and provided with a contact intermediate said blades adapted to be selectively contacted thereby and connected to said input whereby the capacity in the circuit is reduced.

When the reproducer is used as a transmitter, the electrical energy generated by the actuation of the electrical device is so slight that it is necessary to magnify it so that it can have sufficient power to be converted into audible sound by an equivalent reproducer used as a receiver at the other end of the circuit. To accomplish this a two or three stage amplifier is necessary.

The transmitting means is always connected to the input of the amplifier. The electrical energy flows one way from the transmitting device to and through the input of the amplifier, then to and through the loud speaking reproducers used as receivers. When it is desired to change the function of the transmitting reproducer in the circuit to that of a receiver and the receiving reproducer to that of a transmitter, the connections of these reproducers are changed so that the transmitter which was previously connected to the input of the amplifier is changed over to be connected to the output thereof, and the receiver which was previously connected to the output is at the same time changed over to be connected to the input. This change-over is accomplished by means of a non-capacity pole changer switch in circuit with the apparatus and the reproducers.

Prior to 1927 loud speakers were generally designed to function only as loud speaking receivers. When thus used the mass movement of the diaphragm was satisfactory when driven by a power from an outside source, but Bank disclosed that this was not true when the loud speaker receiver was used as a transmitter, because of the extraneous noise resulting from the outside current. He taught that when used as a transmitter the energy thereby generated is so slight and minute that it is necessary for it to reach the first tube of the amplifier with a minimum of loss; that additional energy which he calls uncontrolled energy, created by virtue of the capacity within the components of his apparatus, and the capacity relationship between the elements of the components, renders the slight fluctuations of current created by the reproducer when used as a transmitter insufficient to cause the reproduction of intelligible sound in another reproducer used as a receiver in the circuit. He further disclosed that indeterminate inductances and more particularly capacities, prevalent in the input transformer and other transformers in the circuit, created a bypass which interfered with the electrical energy generated by the transmitting reproducer and prevented the desirable energy from reaching the first vacuum tube in the amplifier. In consideration of these facts Bank says it is desirable that no outside source of power be used, but that the reproducer generate its own electrical energy, from which only the desired energy is allowed to reach the first vacuum tube, with all undesirable energies eliminated. Bank claims to have accomplished this by the use of a transformer provided with certain predetermined capacity characteristics.

In furtherance of Bank's conception it was necessary to permit the selective use of one reproducer to transmit to, as well as receive from, another reproducer in the same circuit. It was well known with respect to vacuum tube phenomena that in order to provide an efficient and stable amplification apparatus there should be an absence of undesirable oscillations in the amplifier, because their presence would result in feed-back, howls, squeals, distortion and the like. This was formerly avoided by placing the input and output circuits as far from each other as was mechanically practical, in order that each might be electrically isolated from the other. However, Bank, in order to change the connections of the reproducers from the input of the amplifier to its output, and vice versa, requires a switch which places the input and output in very close physical relation to each other, yet each is electrically isolated from the other. He accomplishes this result by reducing the capacity between the primary and secondary of the input transformer and other transformers in the circuit, which enables the desirable slight energy generated by the transmitter to reach the first vacuum tube in the circuit, and coupled with a low capacity switch and other transformers in the circuit with predetermined capacities, maintains a proper balance between the input and output circuits, thereby permitting the efficient operation of the reproducer as a transmitter.

Plaintiff contends that the findings of the court, numbered 13 to 19, are contrary to the evidence and the law applicable thereto. Those findings in substance state that the claims of the patent do not satisfy the requirements of the pertinent statute, 35 U.S.C.A. § 33, in that the description is not in such full, clear, concise and exact terms as to enable one skilled in the art to make and use the same, and that the

claims do not particularly point out and distinctly claim the alleged invention. In this respect the court in substance found that one skilled in the art could not, without extensive experimentation, construct Bank's system, nor make it function in the manner described in the patent, because no quantitative values are given for the switches, the transformers and the vacuum tubes, nor are standards disclosed by which one could gauge the adjectives constituting the sole definitions in the patent. Specifically it referred to the terms *predetermined capacity, minimum amplification, and the prevention or reduction of capacity built up in the switch and circuit.*

Plaintiff tells us that it is necessary to predetermine all of the inter-related components, and that their efficiency depends entirely upon the elimination of particular capacities and particular indefinite inductances, and other extraneous things which would prevent the apparatus from properly functioning. He further stated that each individual component would have to be properly measured or predetermined, and that in the year of his application he had no instruments with which to measure such capacities. His expert said that the capacities referred to in the patent would have to be determined very definitely, otherwise the system would howl. Neither plaintiff nor his patent give any quantitative values whatever, either absolute, approximate or relative, and both he and his expert admit that the only way one skilled in the art can successfully practice the disclosures of the patent is by the method of trial and error, and that the only test of successful construction is—does it work? In other words, if one not protected by the patent causes it to work, there is infringement, otherwise there is no infringement.

However, plaintiff says that the type of this invention includes elements of varying conditions depending upon the individual requirements of the system to be used, whether there will be two or more stations, more or less power output, or different distances required between the lines. Hence he insists that his disclosures are reasonably specific under the ruling in Procter & Gamble Mfg. Co. v. Refining, Inc., 4 Cir., 135 F.2d 900, and analogous cases.

■■ From early days it has been held that whether or not a patent claim is sufficiently specific to comply with the statute is a question of fact, except as to the construction of the written words used, to be decided by the trial court, or jury. See Wood v. Underhill, 5 How. 1, 46 U.S. 1, 12 L.Ed. 23; Hogg v. Emerson, 6 How. 437, 47 U.S. 437, 12 L.Ed. 505; 11 How. 587, 52 U.S. 587, 13 L.Ed. 824; Battin v. Taggert, 17 How. 74, 58 U.S. 74, 15 L.Ed. 37; Schumacher v. Buttonlath Mfg. Co., 9 Cir., 292 F. 522; Research Products Co. v. Tretolite Co., 9 Cir., 106 F.2d 530. Such finding should be disturbed only if unsupported by substantial evidence, or if otherwise clearly wrong. In Procter & Gamble v. Refining, Inc., supra, the circuit court affirmed the district court, which had held the claims sufficiently specific. In Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir., 139 F.2d 633, the circuit court reversed the district court which had ruled that the claims were not sufficiently specific. That ruling, however, was due to the fact that the district court had misconstrued the language of the claims, which amounted to an error of law, and brought it within the exception referred to in Hogg v. Emerson, supra.

In Anraku v. General Electric Co., 9 Cir., 80 F.2d 958, the Circuit Court of Appeals of the Ninth Circuit affirmed the district court in holding certain claims sufficiently specific, valid and infringed, and certiorari was denied. In General Electric Co. v. Wabash Appliance Corporation, 2 Cir., 91 F.2d 904, the same patent and the same claims were in issue, and the Second Circuit reversed the district court in holding the claims valid and infringed, and held the patent invalid because anticipated. Certiorari was granted because of conflict, and the Supreme Court affirmed, holding the claims were not sufficiently definite, and that they were functional and invalid, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. Such ruling was not inconsistent with Hogg v. Emerson, supra.

■ In the instant case the evidence on this question was given by plaintiff and his expert witness, and also by the defendants' expert witness, all of whom seemed to be well qualified to testify on the subject. Plaintiff and his expert testified that one skilled in the art could successfully construct and operate the combination device by following the claims and the specifications. This the defendants' expert denied, and the court's findings in this respect were based upon and consistent with the latter testimony. It must be considered as sub-

stantial evidence and we are not permitted to disturb the findings on this phase of the case.

It is quite true that the Commissioner of Patents held the claims sufficiently specific and issued the patent. That ruling resulted in creating a presumption of validity of the claims. However, that presumption was rebuttable before the district court, and it found as a fact that the claims were not sufficiently specific. This court indulges the same presumption, but the question presented is not the same. Under the decisions, we do not understand that we should express our opinion as to whether the claims are sufficiently specific, for that is a question of fact which the district court has decided. Our question is whether the district court's finding in this respect is supported by substantial evidence. We feel constrained to hold that it is, hence, the district court's ruling must be approved that each claim is invalid because it does not satisfy the requirements of section 4888 of the Revised Statutes, 35 U.S.C.A. § 33.

The district court further concluded that each claim is invalid because each describes a structure which is inoperative. We think this fact conclusion is not supported by evidence. Demonstration was made in this court and also in the district court, and the structures thus exhibited operated successfully. True, defendants insist that the structures thus exhibited did not follow the patent disclosures. We think otherwise. However, if there be discrepancies, they are seeming rather than real, and are due to an unreasonable construction of the language of the claims and the specification.

The district court further concluded that none of the claims patentably defined any invention in view of the general state of the art. With this view we are not in accord. Both Bell, No. 174,465 and Colvin, No. 502,091 relate to "soft voice" telephones, and neither includes a vacuum tube amplification, nor loud speakers at opposite ends of an amplifier; Moore, No. 1,341,719 relates merely to a key switch which may be used in plaintiff's combination. However, plaintiff admits that all of his elements are old. The same may be said of the Federal switch, advertised in Radio News, June 1922. The Phonetron Electric Sound Converter, advertised in Radio News, July 1921, uses an outside source of power, which plaintiff proscribes, but neither the advertisement nor any evidence discloses that this sound converter has ever been used as a loud speaker in the same circuit.

None of the art just referred to was cited in defendants' answer, and it was admitted in evidence over plaintiff's objection, not as anticipatory of the patent, but as showing the state of the art. It is apparent from this record that defendants insistently sought to introduce this evidence as proof of anticipation, for their counsel repeatedly asserted that it was pleaded in their answer and counterclaim. This was not true, and a mere glance at that pleading would have established that fact. However, no one, save one of plaintiff's counsel, seems to have inspected it. From the colloquy at that time between the court and counsel it is clear that the court admitted this evidence as bearing on the state of the art and not on anticipation, and that ruling was correct. Grier v. Wilt, 120 U.S. 412, 7 S.Ct. 718, 30 L.Ed. 712. We think defendants must be held to have acquiesced in that ruling. This is clearly indicated by some of defendants' subsequent conduct to which we shall presently refer, although some of such conduct indicates quite the contrary.

Defendants' counsel prepared all the findings and conclusions of law which the court gave. The court therein concludes that the claims are invalid for the reasons that they do not satisfy the requirements of R.S. § 4888, that the structure is inoperative, and that the claims do not patentably define any invention in view of the general state of the prior art. Not one word is said about anticipation, or lack of novelty. However, the last conclusion of law states that "the prayers of the counterclaim should be granted," and the decree provides "that the defendants' counterclaim be and the same is hereby sustained."

The counterclaim pleads invalidity not only because of the three reasons found and concluded by the court, but it pleads and relies on other reasons such as anticipation, lack of novelty and that plaintiff was not the first inventor. We have studied all the evidence admitted and we think there is no substantial evidence to support the charge of invalidity except as to the allegation that the claims are not sufficiently specific under the statute. It seems to us that if defendants had thought

otherwise they would have specifically included in their first conclusion of law the other reasons specifically alleged in their answer and counterclaim rather than by a "catchall" conclusion that all the prayers of the counterclaim should be granted. Unfortunately this conclusion is incorporated in the decree in such manner as to leave no doubt as to its legal effect, for it says "that the defendants' counterclaim be and the same is hereby sustained," not merely as to the specific reasons mentioned in conclusion 1, but as to all the reasons set forth in the answer and counterclaim.

There are certain findings of the court which plaintiff construes as an attempt to support the allegations of the counterclaim with respect to anticipation based upon the art, which was admitted but not pleaded in the answer and counterclaim. Some of those findings, we think, refer merely to separate elements of the combination. However, each element was admitted to be old in the art, and we can see no error in the admission of the unpleaded art, for that of itself would not invalidate the patent. However, it is difficult for us to determine whether findings 30, 31 and 32 are intended to show anticipation or merely the state of the art. Those findings are based upon prior art which was not pleaded, and it would be error to consider them on the question of anticipation or novelty. But be that as it may, it would make no difference here, for if they were considered by the court as anticipatory there was error in so considering them. We are convinced that none of the prior art pleaded either establishes anticipation or a state of the art which would invalidate the patent. The same may be said with respect to the prior art which was not pleaded.

With respect to infringement, we think the district court's findings must be approved because all the loud speakers used in the accused systems are of the dynamic type and no provisions are made in the accused structures to reduce capacities. Furthermore, the transformers in the accused systems are provided with static shields between their primary and secondary windings solely for the purpose of balancing the systems. In these respects we think it cannot be said that defendants are using equivalents of plaintiff's elements.

The remaining question is whether the defendant Rauland, the general manager of the defendant corporation, is a contributing infringer, and whether both defendants are estopped by the following facts from denying validity or infringement. On September 25, 1937, Bank brought suit against The Webster Company for the infringement of this patent. On April 26, 1938, Bank granted a license to that Company under this patent, and on May 3, 1938, The Webster Company consented to the entry of a decree in that suit holding the patent valid and infringed. Except for some initial payments, the Webster Company license was free from the payment of any royalties until the validity of this patent was fully adjudicated. Subsequent to that decree the defendant corporation here purchased a part of the business of The Webster Company, and on account of such transaction plaintiff contends that defendants stepped into the shoes of The Webster Company and were thus estopped from contesting the validity of the patent. We do not think so. The defendants had no part in the Webster litigation, and in the absence of privity they are not liable for the obligations of The Webster Company. See Racine Engine & Machinery Co. v. Confectioners' Machinery & Mfg. Co., 7 Cir., 234 F. 876. We think such privity did not exist. The district court found that neither the corporate nor the individual defendant was in privity with The Webster Company in the litigation between Bank and that Company, and we think that decision was correct. Furthermore, the evidence shows that the defendant, Rauland, acted solely in his capacity as an officer of the corporate defendant and could not be held liable for this alleged infringement. See Weston Electrical Instrument Co. v. Empire Electrical Instrument Co., C.C.N.Y., 166 F. 867.

In conclusion, we affirm the district court's decision as to non-infringement, and as to invalidity of the claims because they are not sufficiently specific under the statute. As to the court's holding that the patent is invalid for any other reason, the decree is reversed.