NATIONAL PHONOGRAPH CO. v. SCHLEGEL et al.

(Circuit Court of Appeals, Eighth Circuit. March 10, 1904.)

No. 1,846.

1. PATENTS—RIGHT OF LICENSEE TO ATTACH CONDITIONS TO UNDERLICENSE —RESERVATION OF RIGHT TO FIX PRICES.

The exclusive licensee for the sale of articles embodying the patented invention or discovery has and controls to that extent the monopoly granted by the letters patent, and may attach such conditions as he sees fit to sales made under his license; and a contract binding a purchaser not to resell for less than certain named prices, or to any other dealer who does not sign a similar agreement, and which makes a compliance with such requirements a condition of the license to use or vend the patented article implied from its sale, is valid and enforceable.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

For opinion below, see 117 Fed. 624.

The bill alleges that complainant is a New Jersey corporation, and defendants are citizens of Iowa; that complainant is the exclusive licensee for the sale of Edison phonographs, record blanks, and records, covered by letters patent owned by the Edison Phonograph Company; that, in conformity with its established plan of selling the articles covered by its license and such letters patent, complainant, on April 27, 1901, entered into a contract in writing, called "Jobber's Agreement," with defendants, whereby, in consideration of sales of said articles to be made by complainant to defendants from time to time at a stated discount, defendants agreed to conform and strictly adhere to and be bound by certain terms and conditions in selling such articles, viz.: (1) To sell only at certain named prices. (2) To sell to no retail dealer who does not sign a prescribed and similar agreement governing and controlling sales by retail dealers. (3) "All Edison Phonographs, Records and Blanks are covered by United States patents and are sold under the condition

that the license to use and vend them implied from such sale is dependent on the observance by the vendee of all the foregoing conditions; upon the breach of any of said conditions the license to use or vend said phonographs, records and blanks, immediately ceases and any vendor or user thereafter becomes an infringer of said patents and may be proceeded against by suit for injunction or damages, or both." The bill also alleges that, under such agreement, complainant sold and delivered to defendants, from time to time, great numbers of Edison phonographs, record blanks, and records, and defendants now have on hand many phonographs, record blanks, and records so purchased; that defendants recognized and conformed to the terms and conditions of said agreement until about March 1, 1902, since which time they have been selling and are continuing to sell large numbers of the phonographs, record blanks, and records so purchased from complainant at prices less than those agreed upon, and to retail dealers throughout the United States who have not signed and who refuse to sign the agreement prescribed for retail dealers. Other allegations relate to the effect of these sales in violation of the agreement, and tend to show pretty clearly that they seriously disturb the business of complainant,' and do it irreparable injury. Among its prayers, the bill asks for preliminary and permanent injunctions restraining defendants from selling phonographs, record blanks, or records so purchased from complainant at prices less than those agreed upon, or to any retail dealer who does not sign the required retailer's agreement. After the filing of the bill and the service of process, defendants consented, in writing, to a permanent injunction as prayed, on condition that no damages or costs should be awarded against them, and complainant moved that such a decree be entered upon the bill and the written consent of defendants. The court, however, entered a decree dismissing the bill. The theory upon which this was done is shown by the following extracts from an opinion filed by the judge at the time: "On the former hearing I reached the conclusion that this is a collusive suit. In this I was mistaken, and I now ground my decision upon the facts pleaded in the bill. * * * Is not the contract one that stifles trade? And if it is such a contract, should this court enforce it by the great writ of injunction? * * * And, aside from the phases of the patent law that have been argued, in my judgment the contract in suit cannot be the basis of an action at either law or in equity. And it likewise is my judgment that the contract cannot be upheld, even though the articles of merchandise are covered by patents."

W. J. Roberts (Howard W. Hayes, on the brief), for appellant.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This is not a suit by the patentee or an assignee to enjoin the infringement of a patent, but is a suit by an exclusive licensee for the sale of articles embodying the patented invention or discovery to restrain the future violation of an underlicense or contract for the sale of such articles by a sublicensee. However, the validity of the underlicense or contract and the right of the licensee to restrain future sales in violation thereof must necessarily be determined by the patent laws, and by the rules applicable to a suit by a patentee or an assignee to enjoin the infringement of a patent. Letters patent for an invention or discovery grant to the patentee, his heirs and assigns, "the exclusive right to make, use and vend the invention or discovery throughout the United States and the territories thereof" for the term of 17 years. Rev. St. § 4884 [U. S. Comp. St. 1901, p. 3381]. This is a monopoly authorized by law, and generally sanctioned by enlightened government. In this case the exclusive right to sell has been trans-

ferred to complainant, and to that extent it has and controls the monopoly granted by the letters patent. An unconditional or unrestricted sale by the patentee, or by a licensee authorized to make such sale, of an article embodying the patented invention or discovery, passes the article without the limits of the monopoly, and authorizes the buyer to use or sell it without restriction; but to the extent that the sale is subject to any restriction upon the use or future sale the article has not been released from the monopoly,.but is within its limits, and, as against all who have notice of the restriction, is subject to the control of whoever retains the monopoly. This results from the fact that the monopoly is a substantial property right conferred by law as an inducement or stimulus to useful invention and discovery, and that it rests with the owner to say what part of this property he will reserve to himself, and what part he will transfer to others, and upon what terms he will make the transfer. Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058; Victor Talking Machine Co. v. The Fair (C. C. A.) 123 Fed. 424; Dickerson v. Tinling, 28 C. C. A. 139, 84 Fed. 192; Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 25 C. C. A. 267, 77 Fed. 288, 35 L. R. A. 728; Cortelyou v. Lowe, 49 C. C. A. 671, 111 Fed. 1005; Edison Phonograph Co. v. Kaufmann (C. C.) 105 Fed. 960; Edison Phonograph Co. v. Pike (C. C.) 116 Fed. 863; Fowle v. Park, 131 U. S. 88, 9 Sup. Ct. 658, 33 L. Ed. 67; Garst v. Harris, 177 Mass. 72, 58 N. E. 174. After mentioning limitations which attach to all property rights under the general law of the land, none of which is applicable to the facts of this case, it is said in Bement v. National Harrow Co., 186 U. S. 91, 93, 22 Sup. Ct. 755, 756, 46 L. Ed. 1058:

"Notwithstanding these exceptions, the general rule is absolute freedom in the use or sale of rights under the patent laws of the United States. The very object of these laws is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee, for the right to manufacture or use or sell the article, will be upheld by the courts. * * * The provision in regard to the price at which the licensee would sell the article manufactured under the license was also an appropriate and reasonable condition. It tended to keep up the price of the implements manufactured and sold, but that was only recognizing the nature of the property dealt in, and providing for its value so far as possible. This the parties were legally entitled to do. The owner of a patented article can, of course, charge such price as he may choose, and the owner of a patent may assign it or sell the right to manufacture and sell the article patented upon the condition that the assignee shall charge a certain amount for such article."

It was urged in that case that the stipulation respecting the price to be demanded was violative of the act of Congress of July 2, 1890, c. 647,.26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], upon the subject of trusts and unlawful combinations, but the court held otherwise, saying (page 92, 186 U. S.,.page 756, 22 Sup. Ct., 46 L. Ed. 1058):

"But that statute does not refer to that kind of a restraint of interstate commerce which may arise from reasonable and legal conditions imposed upon the assignee or licensee of a patent by the owner thereof, restricting the terms upon which the article may be used, and the price to be demanded therefor. Such a construction of the act, we have no doubt, was never contemplated by its framers."

The condition against sales to retail dealers who do not sign a similar agreement governing sales by them was imposed by complainant in the legitimate exercise of its property right in the monopoly, and for the purpose of rendering it valuable. The complainant had the same right to require that such an agreement be exacted from defendants' vendees that it had to demand·it from defendants. Any sale by defendants outside of the terms of their underlicense or contract was an invasion of complainant's lawful monopoly.

The contract which the parties had made, and which defendants were violating, was a valid one, and, upon the allegations of the bill, confessed by defendants, and declared by the court to be not collusive, there should have been a decree for complainant.

The decree is reversed, with instructions to enter a decree permanently enjoining defendants as prayed, but embodying the conditions named in their written assent. ·