### NEW JERSEY PATENT CO. et al. v. SCHAEFFER.

(Circuit Court, E. D. Pennsylvania. February 24, 1908.)

#### No. 7.

1. PATENTS—INFRINGEMENT—PERSONS LIABLE.

Where an infringement of a patent is brought about by a concert of action between a licensee and others, all engaged directly and intentionally became joint infringers.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 457–459.]

2. SAME—RESTRICTIONS ON LICENSES—VALIDITY.

The owner of a patent may fix a minimum price at which his licensees may sell the patented article at retail to the public, and a violation of the license by the licensee is an infringement.

3. SAME—INFRINGEMENT—VIOLATION OF RESTRICTIONS ON SALE OF PATENTED ARTICLE.

Complainant, as exclusive licensee to manufacture and sell a patented article, sold the same only to jobbers under contracts which bound them to sell only at certain prices and only to licensed retail dealers who were required by contract to sell to the public only at certain prices, the license to be forfeited by the breach of such restrictions. Defendant procured another to become a licensee and to purchase the articles and sell the same to him in violation of the license contract, and defendant resold to the public at less than the price fixed by such contract. Held, that such sales were an infringement of the patent.

In Equity. On final hearing.

See 144 Fed. 437.

Delos Holden, Frank L. Dyer, and Charles N. Butler, for complainants.

John H. Fow, for respondent.

HOLLAND, District Judge. This is a suit to restrain the infringement of letters patent, No. 782,375, and for an accounting. The complainants are the New Jersey Patent Company, a corporation of New Jersey, to which the patent was granted as the assignee of the inventor, and which holds the legal title to the patent, and the National Phonograph Company, another New Jersey corporation, which holds the exclusive right to manufacture, use, and sell throughout the United States phonograph records embodying the invention of the patent. The patent covers a composition comprising a metallic soap and a hard wax added thereto, adapted for the manufacture of phonographic records. These records are manufactured and sold to jobbers and retail dealers under the trade-name of "Edison Records," "Edison Standard Records," or "Edison Gold Moulded Records" by the National Phonograph Company through a selling agreement which they have adopted and incorporated in a license which all jobbers and retailers are required to secure from the company. These licenses and agreements are the same for all, requiring every jobber to agree to sell these records at certain prices fixed in the agreement, and only to licensed retail dealers, and the agreement which the company has with the retailer restricts his right to sell at retail for less than 35 cents apiece. The licensee is required to observe other conditions, and both the jobber and the retail dealer stipulate, among other things, that:

"All Edison phonographs, records, and blanks are covered by United States patents, and are sold under the condition that the license to use and vend them, implied from such sale, is dependent on the observance by the vendee of all the foregoing conditions; upon the breach of any of said conditions the license to use or vend said phonographs, records, and blanks immediately ceases, and any vendor or user thereafter becomes an infringer of said patents, and may be proceeded against by suit for injunction or damages, or both."

Each record is encased in a box or carton, upon which is printed, in prominent type, a notice that:

"This record is sold by the National Phonograph Company upon the condition that it shall not be sold to an unauthorized dealer or used for duplication, or that it shall not be sold or offered for sale by the original, or any subsequent purchaser (except by an authorized jobber to an authorized retail dealer) for less than thirty-five cents apiece.

"Upon any breach of said condition, the license to use and vend the record, implied from such sale, immediately terminates."

In his answer he swore that "the records sold by him and offered for sale, about which the complaint is made, were purchased from owners of phonographs who, after having used the same, sold them to him, or exchanged them for others, that he was practically a dealer in secondhand records," and, further, that "he never aided or assisted any other person in the violation of any contract made with the complainants." These statements are untrue, and his testimony at the first

examination was directed to the support of these allegations. It subsequently developed that he had induced Dyer to procure a retail license, for the purpose of enabling him to secure new records at a price less than he could purchase them from jobbers or from the company, and that he did sell new records, obtained in this manner, at less than licensed retailers were permitted by the company to dispose of them to the public. The evidence shows that he purchased secondhand records from the owners of phonographs and disposed of them at such figures as he was able to secure. With this, however, we have no concern. The bill charges the defendant with an infringement of the patent, in that the defendant has sold these records in violation of the restrictions contained in their form of license and the notice upon the box or carton in which the records are encased, and the evidence in the cause fully establishes the truth of these allegations. True, he acted through his representative Dyer, in whose name the license was secured, but he is the responsible party. He disposed of the records of the complainant company to the public in direct violation of the restrictions contained in their retail license. It is true he did not hold a license from the complainants, but his representative did. Dyer was a retail licensee who, in direct violation of the agreement, sold to defendant records at a price which made him an infringer, and the defendant secured his records from Dyer by inducing him to avoid his license and infringe the patent. In so doing, the defendant became the infringer himself. Where an infringement of a patent is brought about by concert of action between a defendant and complainants' licensee, all engaged directly and intentionally become joint infringers. Heaton, etc., Button, etc., Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728; Wells, etc., Co. v. Abraham (C. C.) 146 Fed. 190, and Id., 149 Fed. 408, 79 C. C. A. 228. If they are empowered, under the patent laws, to place such restrictions upon the sale of the invention, the complainants are entitled to an order restraining the defendant and requiring him to account. These contracts restraining the right of licensees to sell upon certain conditions have been before the courts in a number of instances, and the last to which my attention has been called was upon a jobbers' agreement to sell only at certain prices. The defendant sold the patented article at a price less than those agreed upon and to retail dealers who had not signed the agreement prescribed for retailers. The Circuit Court dismissed the bill on the ground that such agreements could not be upheld even though the article of merchandise was covered by patents. The Circuit Court of Appeals for the Eighth Circuit, in the case of National Phonograph Company v. Schlegel, 128 Fed. 733, 64 C. C. A. 594, reversed the Circuit Court, and held that the restrictions placed upon the jobbers in the sale of their invention was valid and would be upheld by the courts.

The patentee has an exclusive monopoly of the right to manufacture, use, and sell the patented article. These substantive rights to manufacture, use, and sell may be granted together or separately, and subject to such restrictions in each case as the patentee may see fit to impose. He may limit the minimum price at which his licensee may sell at retail to the public, and a violation of the license by the latter

is an infringement. Victor Talking Machine Company v. The Fair, 123 Fed. 424, 61 C. C. A. 58; National Phonograph Co. v. Schlegel, supra; Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co., 154 Fed. 358, 83 C. C. A. 336.

This record shows that the defendant has been engaged in selling the complainants' records in violation of the restrictions which it placed upon retail dealers, and a perpetual injunction will be awarded restraining him from infringing the complainants' right in this particular.

Let a decree be entered accordingly.