Opinion for the court filed by Circuit Judge LINN.
Dissenting opinion filed by Circuit Judge MOORE.
LINN, Circuit Judge.
This appeal returns to us following remand from the United States Supreme Court. See Limelight Networks, Inc. v. Akamai Techs., Inc., — U.S. -, 134 S.Ct. 2111, 189 L.Ed.2d 52 (2014). Because our prior decisions in BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373 (Fed.Cir.2007), and Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed.Cir.2008), directly apply to the facts of this case and because the statutory framework of 35 U.S.C. § 271 does not admit to the sweeping notions of common-law tort liability argued in this case, we again conclude that because Limelight Networks, Inc. (“Limelight”) did not perform all of the steps of the asserted method claims of U.S. Patent No. 6,108,703 (the “'703 patent”) and because the record contains no basis on which to impose liability on Limelight for the actions of its customers who carried out the other steps, Limelight has not directly infringed the '703 patent under § 271(a). Accordingly, we affirm the district court’s finding of nonin-fringement and do not reach Limelight’s cross-appeal regarding damages. We also confirm our previously reinstated affir-mance of the district court’s judgment of noninfringement of U.S. Patents No. 6,553,413 (the “'413 patent”) and No. 7,103,645 (the “'645 patent”). See Akamai Technologies, Inc. v. Limelight Networks, Inc., 629 F.3d 1311 (Fed.Cir.2010), which was vacated, 419 Fed.Appx. 989 (Fed.Cir. *904 2011) (en banc), and then partially reinstated. Order No. 2009-1372 (Fed.Cir. Sept. 27, 2012) (en banc).
I. Background
A detailed description of the history of proceedings, the technology and the claims at issue in this case is set forth in the prior reported opinions of this court and the Supreme Court and will not be repeated except to the extent germane hereto. See Limelight, 134 S.Ct. 2111; Akamai Technologies, Inc. v. Limelight Networks, Inc., 692 F.3d 1301 (Fed.Cir.2012) (en banc); Akamai, 629 F.3d 1311.
II. Divided .InfRingement Under § 271(a)
In the court’s view, and for the reasons set forth in more detail, infra, direct infringement liability of a method claim under 35 U.S.C. § 271(a) exists when all of the steps of the claim are performed by or attributed to a single entity — as would be the case, for example, in a principal-agent relationship, in a contractual arrangement, or in a joint enterprise.[1] Because this case involves neither agency nor contract nor joint enterprise,' we find that Limelight is not liable for direct infringement.
Direct infringement under § 271(a) requires a party to perform or use each and every step or element of a claimed method. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). For method patent claims, direct infringement only occurs when a single party or a joint enterprise performs all of the steps of the process. See Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed.Cir.1993) (“A method claim is directly infringed only by one practicing the patented method.” (emphasis omitted)); Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1567-68 (Fed.Cir.1983) (“Because the [method] claims include the application of a diazo coating’or other light sensitive layer and because Advance’s customers, not Advance, applied the diazo coating, Advance cannot be liable for direct infringement with respect to those plates.”). This holding derives from the statute itself, which states “whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.” § 271(a). Encouraging or instructing others to perform an act is not the same as performing the act oneself and does not result in direct infringement. BMC, 498 F.3d at 1378-79. This is evidenced by the fact that § 271 has separate subsections addressing induced and contributory infringement. When a party participates in or encourages infringement but does not directly infringe a patent, the normal recourse under the law is for the court to apply the standards for liability under indirect infringement. Id. However, indirect infringement requires, as a predicate, a finding that some party is directly liable for the entire act of direct infringement. Limelight, 134 S.Ct. at 2115. In circumstances in which one party, acting as “mastermind” exercises sufficient “direction or control” over the actions of another, such that those actions may be attributed to the mastermind, the combined performance of the steps of a method claim will directly infringe under § 271(a). BMC, 498 F.3d at 1382. “Under BMC Resources, the control or direction standard is satisfied in situations where the law would traditional *905 ly hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method.” Muniauction, 582 F.3d at 1330. This may occur in a principal-agent relationship, a contractual relationship or in circumstances in which parties work together in a joint enterprise functioning as a form of mutual agency.
Akamai asserts that the Supreme Court’s Limelight decision “strongly implies that a change in direction on § 271(a) is warranted.” Br. for Akamai at 3, Akamai, No. 2009-1372 (Fed.Cir. Aug. 18, 2014) (“Akamai’s Letter Br.”). It claims that in lieu of overruling Muniauction, this panel can decline to extend it to the facts of this case. Id. According to Akamai, an accused infringer “directs or controls” a third party if the accused infringer goes beyond loosely providing instructions and specifically tells a third party the step or steps to perform. Id. at 9. In its en banc briefing, Akamai cites joint tortfeasor principles as support. See, e.g., Principal Br. for Pls. Appellants at 21, Akamai, 692 F.3d 1301 (available at 2011 WL 2822716) (citing Restatement (Second) of Agency § 212, cmt. a (discussing the tort principle that “one causing and intending an act or result is as responsible as if he had personally performed the act or produced the result”)); id. at 22 (quoting Restatement (Second) of Torts § 877(a) (subjecting a party to liability for “ordering]” conduct)). Limelight responds that Akamai’s expansive attribution theory “would render both Section 271(b) and Section 271(c) meaningless.” Br. of Def.-Cross-Appellant Limelight Networks, Inc. on Rehearing En Banc at 41, Akamai 692 F.3d 1301 (available at 2011 WL 3796785) (quoting Mark A. Lemley et al., Divided Infringement Claims, 6 Sedona Conf. J. 117, 119-20 (2005) (“Lemley”)).
We begin by considering whether § 271(a) incorporates- joint tortfeasor liability, as Akamai and the dissent advocate. Unquestionably, it does not. As codified by Congress, § 271(a) includes only the principles of vicarious liability, as embodied in the single entity rule. Presented with numerous conflicting theories of joint liability that existed in the common law prior to 1952, Congress enacted specific rules for inducement and contributory liability in § 271(b) and (c), respectively. While the dissent believes this leaves a “gaping hole,” Dissent at 915-16, it is not our position to legislate or contravene Congress’ choice — right or wrong — by importing other theories of joint liability into § 271(a).
The alternative — stretching § 271(a) to include joint tortfeasor liability — is flawed. To make joint tortfeasor liability consistent with the well-established fact that direct infringement liability under § 271(a) is strict liability, Akamai and the dissent must abandon several core tenets of joint tortfeasor law. This position also leads to untenable results. For example, the dissent advocates holding a customer jointly and severally liable for patent infringement based on its performance of a single step of a claimed method, even when it has no knowledge of the patent.
In the analysis that follows we address, in turn, three subjects: the statutory scheme of § 271, the divided infringement case law, and the errors in importing joint tortfeasor liability into § 271(a).'
A. The Statutory Scheme of § 271
Patent infringement is not a creation of common law. It is a tort defined by statute. See Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 40, 43 S.Ct. 254, 67 L.Ed. 516 (1923) (“The monopoly [granted to the patentee] did not exist at common law, and the rights, there *906 fore, which may be exercised under it cannot be regulated by the rules of the common law.” (quoting Gayler v. Wilder, 51 U.S. (10 How.) 477, 494, 13 L.Ed. 504 (1850))); 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1379 (Fed.Cir.1998) (“Defining the contours of the tort of infringement, which exists solely by virtue of federal statute, entails the construction of the federal statute and not a state’s common or statutory law.”) (citing N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed.Cir.1994)).
35 U.S.C. § 271(a) provides that:
Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
Section 271(a) defines infringement. H.R.Rep. No. 82-1923, at 9 (1952) (“Section 271, paragraph (a), is a declaration of what constitutes infringement.” (emphasis added)). Subsections ■ (b) and (c), in turn, codify the doctrines of inducement and contributory infringement respectively.
The Supreme Court has observed that “the 1952 Act did include significant substantive changes, and ... § 271 was one of them.” Dawson Chem. Co. v. Rohm & Haas Co., 448 U.S. 176, 204, 100 S.Ct. 2601, 65 L.Ed.2d 696 (1980). In the 1952 Patent Act, Congress removed joint-actor patent infringement liability from the discretion of the courts, defining “infringement” in § 271(a) and expressly outlining in § 271(b) and (c) the only situations in which a party could be liable for something less than an infringement. This was purposeful. At the time, the courts applied a myriad of approaches to multi-actor infringement: some liberally allowed for multi-actor liability, see, e.g., Peerless Equip. Co. v. W.H. Miner, Inc., 93 F.2d 98, 105 (7th Cir.1937); Solva Waterproof Glue Co. v. Perkins Glue Co., 251 F. 64, 73-74 (7th Cir.1918), while others nearly never permitted multi-actor liability, see, e.g., Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 669, 64 S.Ct. 268, 88 L.Ed. 376 (1944) (“[w]hat residuum [of contributory infringement] may be left we need not stop to consider”); Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 684, 64 S.Ct. 278, 88 L.Ed. 396 (1944). In enacting § 271(b) and (c), Congress cleared away the morass of multi-actor .infringement theories that were the unpredictable creature of common law in favor of two infringement theories that it defined by statute. See Contributory Infringement in Patents — Definition of Invention: Hearings on H.R. 5988, 4-061, and 5248 Before the Subcomm. on Patents, Trademarks, and Copyrights of the H. Comm, on the Judiciary, 80th Cong. 12 (1948) (statement of Giles S. Rich on behalf of the New York Patent Law Ass’n) (“contributory infringement is a specific application to patent law of the law of joint tort feasor”); Hearing on H.R. 3866 Before Subcomm. No. 4 of the H. Comm, on the Judiciary, 81st Cong. 2 (1949) (statement of Giles S. Rich on behalf of the New York Patent Law Ass’n) (“Time out of mind, under the old common law, there has been a doctrine of joint tort feasors to the effect that people who jointly commit a tort are jointly and severally liable. This contributory infringement is nothing but the application of that doctrine to patent law.”); id. at 3, 6-7; Giles S. Rich, Infringement Under Section 271 of the Patent Act of 1952, 35 J. Pat. Off. Soc’y 476, 480 (1953) (“Contributory infringement is an expression of the old common law doctrine of joint tort feasors.” (emphases in original)).
Indeed, in this way, Congress carefully crafted subsections (b) and (c) to *907 expressly define the only ways in which individuals not completing an infringing act under § 271(a) could nevertheless be liable. See, e.g., Dawson, 448 U.S. at 187-214, 100 S.Ct. 2601 (discussing at length the state of contributory infringement pri- or to the 1952 Patent Act and the legislative history of the 1952 Act). Therefore, to the extent that tort law’s contributory liability principles are applicable at all, § 271(b) and (c) embody the application of contributory liability principles to patent law. See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 184, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (“The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere.”). We must respect Congress’ deliberate choice to enact only certain forms of contributory liability in § 271(b) and (c).[2]
Furthermore, Akamai’s broad theory of attribution — in which a defendant would be liable for “causing and intending an act or result,” Akamai’s Letter Br. at 4 (citations omitted) — would render § 271(b) redundant. Subsection (b) states: “Whoever actively induces infringement of a patent shall be liable as an infringer.” The Supreme Court in Global-Tech, quoting Webster’s, explained that to induce “means to lead on; to influence; to prevail, on; to move by persuasion or influence.” Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 131 S.Ct. 2060, 2065, 179 L.Ed.2d 1167 (2011) (quoting Webster’s New International Dictionary 1269 (2d ed.1945)) (internal citations and brackets omitted). Webster’s contains several, somewhat overlapping, definitions for “induce,” one of which is “cause.” Webster’s at 1269; accord Dansereau v. Ulmer, 903 P.2d 555, 564 (Alaska 1995); United States v. McQueen, 670 F.3d 1168, 1170 (11th Cir.2012). And even the definitions expressly quoted in Global-Tech — namely: to lead on; to influence; to prevail on; to move by persuasion or influence — are all ways to “cause.” The Supreme Court in Global-Tech further explained that the adverb “actively” means that “the inducement must involve the taking of affirmative steps to bring about the desired result.” 131 S.Ct. at 2065 (citing Webster’s at 27). This “obviously [requires] knowing] the action that [the inducer] wishes to bring about.” Id. Thus, a defendant actively induces patent infringement under § 271(b) if she causes infringement while intending the act or result to occur (along *908 with certain other requirements). See Black’s Law Dictionary 1321 (8th ed.1999) (defining “active inducement” as “[t]he act •of intentionally causing a third party to infringe á valid patent”).
But if, as Akamai contends, there is liability under § 271(a) for “one causing and intending an act or result,” there is no need for a separate tort for induced infringement. This is crystallized by the language of the Restatement (Second) of Torts § 877(a) — cited by Akamai — which subjects a defendant to liability for tor-tious conduct of another if the defendant “orders or induces the conduct” (emphasis added).
For essentially the same reasons, Aka-mai’s broad reading of § 271(a) would make § 271(c) redundant as well. Subsection (c), as originally enacted, stated:
(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.
As with § 271(b), liability for § 271(c) requires knowledge or willful blindness of the patent, Global-Tech, 131 S.Ct. at 2068, and requires direct infringement. Aro Mfg. Co. v. Convertible Top Replacement Co. (Aro II), 377 U.S. 476, 484, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Thus, § 271(c) also entails causing customers to act as they did and intending the acts and/or results. There is no principled reason why Akamai’s attribution theory should not apply to combination patents. But it is well settled that the sale of an unpatented component will at most raise a question of infringement under subsection (c), not subsection (a). See 35 U.S.C. § 271(c); Aro Mfg. Co. v. Convertible Top Replacement Co. (Aro I), 365 U.S. 336, 339-40, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (because “the fabric is no more than an unpatented element of the combination which was claimed as the invention[,] [i]t follows that petitioners’ manufacture and sale of the fabric is not a direct infringement under 35 U.S.C. § 271(a)”).
While Akamai at various points uses slightly different phrasing for when one party’s actions should be attributed to another, all of its proposed tests suffer the same failing: they make § 271(b) and (c) redundant. Akamai’s proposed interpretation thus contravenes the rule that “we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 111, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).
The dissent is faced with the same problem. To manufacture a single case in which its expansive interpretation of § 271(a) would not render § 271(b) and (c) superfluous, the dissent imposes a requirement that each joint patent infringer must perform at least one step of the method, see Dissent at 922. However, this single step requirement necessitates a new and •untested definition of the word “uses.” It also conflicts with the common law of torts — the authority cited by the dissent for its broad interpretation of § 271(a). The common law of torts would hold liable an entity that, with sufficient intent, aided another in committing a tort, even if that entity did not commit any element of the tort itself.
B. Divided Infringement Case Law
Under the language of § 271(a), this court’s “divided infringement” case *909 law is rooted in traditional principles of vicarious liability. Under the principles of vicarious liability, direct infringement does not occur unless all steps of a method claim are performed by or attributable to a single entity. This is the single entity rule. BMC confirmed that where the actions of one party can be legally imputed to another, such that a single entity can be said to have performed each' and every element of the claim, that single entity is liable as a direct infringer. 498 F.3d at 1380-81. Before BMC, the judiciary and the patent law community recognized that multiple actors could together infringe a patent only if one controlled the other(s). See Mobil Oil Corp. v. Filtrol Corp., 501 F.2d 282, 291-92 (9th Cir.1974) (“Mobil contends that Filtrol and Texaco split between them the performance of the four steps of the claim.... We question whether a method claim can be infringed when two separate entities perform different operations and neither has control of the other’s activities. No case in point has been cited.” (emphasis added)); BMC Res., Inc. v. Paymentech, L.P., No. 3:03-cv-1927, 2006 WL 1450480, at *4 (N.D.Tex. May 24, 2006); Lemley, 6 Sedona Conf. J. at 118 (“[CJourts have imposed liability for direct infringement where another person acts as an agent of the alleged infringer.” (emphasis added)).
Applying traditional principles of vicarious liability to direct infringement under § 271(a) protects patentees from a situation where a party attempts to “avoid infringement ... simply by contracting out steps of a patented process to another entity.... It would be unfair indeed for the mastermind in such situations to escape liability.” BMC, 498 F.3d at 1381. In addition, in patent law, unlike in other areas of tort law — where the victim has no ability to define the injurious conduct upfront — the patentee specifically defines the boundaries of his or her exclusive rights in the claims appended to the patent and provides notice thereby to the public so that it can avoid infringement. As this court correctly recognized in BMC, “[t]he concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting. A patentee can usually structure a claim to capture infringement by a single party.” 498 F.3d at 1381. Further, many amici have pointed out that the claim drafter is the least cost avoider of the problem of unenforceable patents due to joint infringement. It would thus be unwise to overrule decades of precedent in an attempt to enforce poorly-drafted patents.
The dissent asserts that a handful of pre-1952 cases conflict with the single entity rule. But all of these cases do not involve method claims, see York & Md. Line R.R. Co. v. Winans, 58 U.S. (17 How.) 30, 15 L.Ed. 27 (1854); Thomson-Houston Elec. Co. v. Ohio Brass Co., 80 F. 712 (6th Cir.1897); Wallace v. Holmes, 29 F.Cas. 74, 80 (C.C.D.Conn.1871); Jackson v. Nagle, 47 F. 703, 703 (C.C.N.D.Cal.1891); N.J. Patent Co. v. Schaeffer, 159 F. 171, 173 (C.C.E.D.Pa.1908)[3], and/or concern contributory (as opposed to direct) infringement. See Peerless, 93 F.2d at 105; Solva, 251 F. at 73; Thomson-Houston, 80 F. at 721; Wallace, 29 F.Cas. 74.[4] *910 Cases discussing apparatus (as opposed to method) claims are not helpful because whoever combines the last element of an apparatus necessarily, individually, “makes” the invention. Thus, in the case of an apparatus claim, there is always a single entity directly infringing the patent. By contrast, because “a process is nothing more than the sequence of actions of which it is comprised, the use of a process necessarily involves doing or performing each of the steps recited.” NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1318 (Fed.Cir.2005). As such, only method claims can raise an issue of divided infringement.
The contributory infringement cases are, by their terms, not discussing direct infringement. The dissent acknowledges this, see Dissent at 925 (“some of the[se] pre-1952 principles and cases ... are more akin to what we today consider to be indirect infringement than direct infringement under § 271(a)”), but suggests that the 1952 Act changed the contours of direct infringement, categorizing certain behaviors that formerly were described as contributory infringement as direct infringement. This is wrong. The enactment of § 271(a) “left intact the entire body of case law on direct infringement.” Warner-Jenkinson, 520 U.S. at 26-27, 117 S.Ct. 1040 (quoting Aro I, 365 U.S. at 342, 81 S.Ct. 599). Today, just as in 1952, where a single entity does not perform each and every claim limitation, that entity may not be characterized or held liable as a direct infringer. See Aro I, 365 U.S. at 340, 81 S.Ct. 599; Fromson, 720 F.2d at 1567-68. Contributory actions — such as the performance of some, but not all, steps of a method claim — do not meet the all elements test, and thus must be analyzed exclusively under the rules of indirect infringement. BMC, 498 F.3d at 1381 (“[Expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement.”). Therefore, the principles of vicarious liability govern § 271(a).
Turning to the scope of vicarious liability, the vicarious liability test includes, for example, principal-agent relationships, contractual arrangements, and joint enterprises. In a principal-agent relationship, the actions of the agent are attributed to the principal. Similarly, when a contract mandates the performance of all steps of a claimed method, each party to the contract is responsible for the method steps for which it bargained. However, this type of contractual arrangement will typically not be present in an arms-length seller-customer relationship.
Finally, in a joint enterprise, the acts of each participant are, by definition, imputed to every member.
All members of a joint venture may be jointly and severally liable to third persons for wrongful acts committed in furtherance of the joint enterprise or venture. Thus, the negligence of one participant in the enterprise or venture, while acting within the scope of agency created by the enterprise, may be imputed to another participant so as to render the latter liable for the injuries sustained by third persons as a result of the negligence.
48A C.J.S. Joint Ventures § 62 (footnotes omitted); see also Restatement (Second) of Torts § 491 (1965) (“Any one of several persons engaged in a joint enterprise, such as to make each member of the group responsible for physical harm to other per *911 sons caused by the negligence of any member, is barred from recovery against such other persons by the negligence of any member of the group.”). A joint enterprise exists for the purposes of imposing vicarious liability when there is:
(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right, to a voice in the direction of the enterprise, which gives an equal right of control.
Restatement (Second) of Torts § 491, cmt' c.; see also 57B Am.Jur.2d Negligence § 1138 (2015).
C. Errors in Importing Joint Tortfea-sor Liability into § 271(a)
The majority and dissent agree that liability exists under traditional principles of vicarious liability, such as where a mastermind directs or controls another to perform all steps of a claimed method. But the dissent’s rule is far broader — Akamai and the dissent insist that they can thrust common law joint tortfeasor liability into § 271(a). The dissent would extend liability to “inelude[ ] parties who act in concert to collectively perform the claimed process pursuant to a common plan, design, or purpose.” Dissent at 923. The error of this approach is that it attempts to fit a square peg in a round hole: joint tortfea-sor law and § 271 are fundamentally incompatible. To import joint tortfeasor law into § 271(a), Akamai and the dissent depart from three indispensable common law limits on joint tortfeasor liability.
First, the Restatement is clear that joint tortfeasor liability “includes only situations in which the defendant has been personally guilty of tortious conduct.” Restatement (Second) of Torts § 875, cmt. a (1979). Yet personal guilt of direct infringement of a method claim under § 271(a) requires performance by the accused of all steps recited in the claim. The Restatement (Second) of Torts § 876, cmt. c (1979) explains that “[o]ne who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability.” Thus, contrary to Akamai’s and the dissent’s positions, actors whose innocent actions coordinate to cause harm generally are not subject to liability at common law.
Second, the dissent purports to adopt the Restatement’s rule of action in concert. But, according to the Restatement, “[p]arties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result.” Restatement (Second) of Torts § 876, cmt. a. This definition stresses that there must be mutual agreement between the parties. Thus, the Restatement describes “acting in concert” as a form of “mutual agency.” Id. This is consistent with the early patent law treatises that limited joint infringement to parties “acting in complicity with others,” 3 William C. Robinson, The Law of Patents for Useful Inventions § 946 (1890), or parties “cooperatfing]” in infringement, Albert H. Walker, Textbook of the Patent Laws of the United States of America § 406 (4th ed.1904). There is no mutual agency or cooperation when parties act independently for their own benefit, such as in arms-length seller-customer relationships.
The dissent, meanwhile, would extend liability even to arms-length agreements, so long as one party “know[s] of th[e] [other] party’s actions.” Dissent at 928-29. This position contravenes both patent law and tort law. The Supreme Court in Globalr-Tech held that “a direct infringer’s knowledge or intent is irrelevant,” 131 *912 S.Ct. at 2065 n. 2, yet the dissent imposes a knowledge requirement. And common tort law requires both parties to know the others’ actions to act in concert. See Restatement (Second) of Torts § 876(a) (“a tortious act in concert with the other or pursuant to a common design with him” (emphases added)). One party is “not acting in concert with the other” if it “innocently, and carefully, does an act which happens to further the tortious purpose of [the] []other.” W. Page Keeton et al., Prosser & Keeton on Torts § 46 (1984). Further, as Prosser and Keeton make clear, even more is required. “There are even occasional statements that mere knowledge by each party of what the other is doing is sufficient ‘concert’ to make each liable for the acts of the other; but this seems clearly wrong.” Id. (emphasis added). Here, there is no evidence that Limelight’s customers knew what steps Limelight was taking, much less evidence that they coordinated further. Thus, there was no concert of action. Contrast Dissent at 927-28 (stating that Limelight and its customers acted “in concert”); id. at 929-30 (same).
Third, the Restatement describes yet another requirement for concerted action: knowledge of harm. The common law sources cited in Akamai’s briefs acknowledge that, for joint liability, a defendant needs knowledge of damage done or harm caused. See Akamai’s Letter Br. at 5 (quoting Prosser, § 47, which requires knowing that the conduct will “cause damage”); Br. for Resp’ts at 26, Akamai, 134 S.Ct. 2111 (available at 2014 WL 1260422) (“Akamai’s Supreme Court Br.”) (quoting Warren v. Parkhurst, 45 Misc. 466, 92 N.Y.S. 725, 727 (N.Y.Sup.Ct.1904), which requires “knowing that the contributions by himself and the others ... w[ould] result necessarily in the destruction of the plaintiffs property” (emphasis and alterations in Akamai’s Supreme Court Br.)); id. at 928-29 (quoting Folsom v. Apple River Log-Driving Co., 41 Wis. 602, 610 (1877), which found liability for flooding where defendant “had notice beforehand of such obstruction, and of the fact that its effect, together with the company’s use of the water beyond its natural flow, would be to flo[od] the plaintiffs land” (alterations in Akamai’s Supreme Court Br.)); id. at 929-30 (quoting Wallace, 29 F.Cas. at 80, which imposed joint liability where parties “engaged in a common purpose to infringe the patent”). Indeed, this common law requirement was statutorily enacted into 35 U.S.C. § 271(b) and (c). See Global-Tech, 131 S.Ct. at 2068 (holding that both subsections (b) and (c) “require[] knowledge [or willful blindness] of the existence of the patent that is infringed”).
This is consistent with the description in Prosser & Keeton requiring “a common plan or design to commit a tortious act,” Prosser & Keeton on Torts § 46. To apply a “knowledge of the harm” principle to § 271(a), however, would require knowledge of the patent, knowledge of the steps recited in the claims, and knowledge of the risk of infringement presented by performance of those steps. Adopting such a requirement for liability under § 271(a) would be contrary to centuries of settled Supreme Court precedent that “a direct infringer’s knowledge or intent is irrelevant.” Global-Tech, 131 S.Ct. at 2065 n. 2; see also Hogg v. Emerson, 52 U.S. 587, 607, 11 How. 587, 13 L.Ed. 824 (1850).
The dissent’s reasoning for eliminating these three common law limits, on joint tortfeasor liability is that “not all joint tortfeasor scenarios are permissible under the language of § 271(a).” Dissent at 929. But this simple response is wholly insufficient — it does not explain why patent law should allow for more expansive joint tort-feasor liability than other areas of law. The common law has carefully crafted *913 these limits on tort liability over centuries, in light of fairness and justice. We may not blithely toss these limits aside.
The dissent’s rule also leads to several extraordinary results. For example, a customer who performs a single step of a patented method by merely using a product as intended would be jointly and severally hable for direct infringement under § 271(a). See Dissent at 920 (“ ‘whoever ... uses’ a process for the purposes of infringement covers multiple parties who act in concert”). It is nothing short of remarkable that while Congress and state legislators express their concern about the vulnerability of innocent. customers to charges of patent infringement, Akamai and the dissent labor to create an unprecedented interpretation of existing law to make customers significantly more vulnerable to such charges. This is especially troubling given that the customer can be liable even without knowing of the patent. Moreover, the dissent’s “knowledge of the others’ actions” requirement is an illusory protection for customers and other unsuspecting parties. Institution of a patent infringement lawsuit informs accused in-fringers of third parties’ actions, so, at most, requiring knowledge of the others’ actions limits the patentee’s recovery to post-suit damages.
The drastic expansion of predatory customer suits is not a theoretical concern. Several amici, the White House, and other commentators identify numerous instances where patentees have sent demand letters to or sued dozens, hundreds, or, in some cases, even thousands of unsophisticated downstream users.[5] If the law were expanded to impose joint and several liability on users of a single prior art method step, it would subject swathes of innocent' actors across diverse industries to these practices.[6] Using real patents as examples, amici warn that individuals could be liable for patent infringement for so little as initiating communication with a doctor or swiping a debit card.[7] .Another amici explains that “the hundreds if not thousands of contracts in a technology company’s supply chain could expose each actor in that supply chain to potential patent infringement liability....” Cisco Br. at 5. Based on this fact, a patentee could draft “dependent claims whose sole purpose is to add prior art steps precisely to increase the patent applicant’s litigation and licensing options post-issuance.” Id. at 4.
Finally, the dissent’s position leads to another perverse result: the addition of a claim limitation can actually serve to make more parties liable for infringement. Consider a hypothetical in which independent claim 1 recites a “repli- *914 eating” step and claim 2, dependent therefrom, adds the limitation of a “tagging” step. The dissent’s rule, which requires only concerted action and does not require attribution of the acts of one party to the other, would result in a party that performs the tagging step but not the replicating step being liable for directly infringing dependent claim 2 while not being liable for infringing the broader claim from which it depends. This conflicts with the “long ... established” rule that a dependent claim cannot be infringed unless the independent claim from which it depends is also infringed. Teledyne McCormick Selph v. United States, 214 Ct.Cl. 672, 558 F.2d 1000, 1004 (1977); accord Ferring B.V. v. Watson Labs., Inc.-Fla., 764 F.3d 1401, 1411 (Fed.Cir.2014) (“Because we hold that the asserted independent claims of Ferring’s patents are not infringed, the asserted dependent claims are likewise not infringed.” (citing cases)).
III. The Facts of this Case
Akamai argues that the facts here are different from those in Muniauction, because Limelight provides more specific instructions and because it has a contract with its customers. Akamai’s Letter Br. at 8-9; see also Corrected Br. of PlsAppellants at 44, Akamai, 629 F.3d 1311 (available at 2009 WL 6849543) (“Akamai’s Op. Br.”). Limelight argues that the law has not changed since the original panel decision. The same precedents that led to the original panel decision, most notably BMC and Muniauction, are still binding on this court. Br. for Limelight at 1-2, Akamai No. 2009-1372 (Fed.Cir. Aug. 18, 2014). In its original panel briefing, it argued that the district court was correct that this case is “indistinguishable” from Muniauction. See Principal and Resp. Br. of Def.-Cross-Appellant Limelight Networks, Inc. at 34, Akamai 629 F.3d 1311 (available at 2009 WL 5070030). It further argues that even if there is a contract between Limelight and its customers, which it contests, this contract “does not compel the customer to do anything.” Id. at 41.
In this case, there is nothing to indicate that Limelight’s customers are performing any of the claimed method steps as agents for Limelight, or in any other way vicariously on behalf of Limelight. To the contrary, Limelight’s customers direct and control their own use of Limelight’s content delivery network (“CDN”). Limelight’s customers serve their own web pages, and decide what content, if any, they would like delivered by Limelight’s CDN. Customers sometimes even have Limelight’s CDN and competing CDNs simultaneously deliver the same content. As such, customers — not Limelight — direct and control which CDN delivers each and every object of their content. Limelight’s customers do not become Limelight’s agents simply because Limelight provides its customers a written manual explaining how to operate Limelight’s product.
Moreover, Limelight’s CDN is a service similar to Thomson’s on-line auction system in Muniauction, and Limelight’s relationship with its customers is similar to Thomson’s relationship with the bidders. In both cases, customers are provided instructions on use of the service and are required to perform some steps of the claimed method to take advantage of that service. In Muniauction, the customers performed the step of bidding. Here, the customers determine what website content should be delivered by Limelight’s CDN and then, allegedly, perform the step of “tagging” that content. Limelight’s customers also perform the step of “serving” their own web pages. As the district court found, there is “no material difference between Limelight’s interaction with its cus *915 tomers and that of Thompson in Muniauction.” Akamai, 614 F.Supp.2d at 122.
Akamai also argues that the relationship between Limelight and its customers compels a finding of infringement because Limelight “contracts out to content providers the claim steps that it alone does not perform.” Akamai’s Op. Br. at 40. This assertion stems from Limelight’s standard form contract that, according to Akamai, “obligates content providers to perform the claim steps of tagging the embedded objects and serving the tagged page so that requests for the embedded objects resolve to Limelight’s network instead of the content provider’s.” Id. For this argument, Akamai relies on the statement in BMC that “[a] party cannot avoid infringement ... simply by contracting out steps of a patented process to another entity,” 498 F.3d at 1381.
Akamai’s reliance on this statement is misplaced. As discussed above, Limelight’s customers decide what content, if any, they choose to have delivered by Limelight’s CDN and only then perform the “tagging” and “serving” steps. The form contract does not obligate Limelight’s customers to perform any of the method steps. It merely explains that customers will have to perform the steps if they decide to take advantage of Limelight’s service. Because the customers were acting for their own benefit, Limelight is not vicariously liable for the customers’ actions. See BMC, 498 F.3d at 1379 (holding that liability exists only where the accused infringer has “someone else carry out one or more of the claimed steps on its behalf’); Muniauction, 532 F.3d at 1329 (“mere ‘arms-length cooperation’ will not give rise to direct infringement by any party”) (quoting BMC, 498 F.3d at 1381).
In the present case, the asserted claims were drafted so as to require the activities of both Limelight and its customers for a finding of infringement. Thus, Akamai put itself in a position of having to show that the allegedly infringing activities of Limelight’s customers were attributable to Limelight. Akamai did not meet this burden because it did not show that Limelight’s customers were acting as agents of or otherwise contractually obligated to Limelight or that they were acting in a joint enterprise when performing the tagging and serving steps. Accordingly, we affirm the district court’s grant of Limelight’s motion for JMOL of non-infringement under § 271(a).
IV. Conclusion
For the foregoing reasons, this court affirms the district court’s grant of Limelight’s motion for JMOL of non-infringement of the '703 patent.
Limelight argues as an alternative ground for affirmance that Akamai presented no substantial evidence that Limelight or its customers actually performed the tagging limitation as properly construed. Because we find that the district court properly granted JMOL of nonin-fringement on the ground stated, we need not and do not address this argument. Likewise, we do not reach Limelight’s conditional cross-appeal of the damages award alleging that Akamai failed to present economic proof of a causal link between Limelight’s infringement and any Akamai lost sales.
We also confirm our previously reinstated affirmance of the district court’s judgment of noninfringement of the '413 and '645 patents.
AFFIRMED

. Because this case does not implicate joint enterprise liability, this case is not the appropriate vehicle to adopt joint enterprise liability-

. Akamai and the dissent argue that the word "whoever” in § 271(a) ("whoever ... uses ... any patented invention”) undermines the single entity rule because it is plural. See 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise — words importing the singular include and apply to several persons, parties, or things.... ” (emphasis added)). The court agrees that "whoever” is plural, but Akamai and the dissent’s argument fails for two reasons. First, the statute simply states the obvious: more than one entity can be independently liable for direct patent infringement if each entity practices every element of the claim. Second, the statutory context, with § 271(b) and (c) extending liability in limited circumstances to actors who do not independently infringe, establishes that § 271(a) excludes joint liability.
The dissent’s interpretation of "whoever” as “any person or persons” is also too sweeping for its purposes. The plain meaning of § 271(a), as the dissent would have it, contains no requirement that the parties "act in concert pursuant to a common plan or design,” Dissent at 925, and the dissent introduces it with no statutory basis. The dissent’s analogy to joint inventors, see id. at 920, 922-23, 923, only underscores this problem. That joint inventors must have some connection derives from the word “jointly” found in § 116 — see, e.g., Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 776 F.3d 837, 846 (Fed.Cir.2015) (citing cases) — not from the word "[wjhoever.”

. Jackson related to a claim for infringement of claims 1, 4, and 5 of U.S. Patent No. 263,412 (the "'412 patent”), claims 1 and 2 of U.S. Patent No. 269,863 (the "863 patent”), and claims 2 and 3 of U.S. Patent No. 302,338 (the ‘"338 patent”). 47 F. at 703. Schaeffer related to a claim for infringement of U.S. Patent No. 782,375 (the "'375 patent”). 159 F. at 172. None of these are method claims. See '412, '863, '338 and '375 patents.

. Though Wallace does not explicitly use the term, it is a recognized example of contributory infringement. See Dawson, 448 U.S. at *910 187-88, 100 S.Ct. 2601; Aro II, 377 U.S. at 500, 84 S.Ct. 1526; Henry v. A.B. Dick Co., 224 U.S. 1, 34, 32 S.Ct. 364. 56 L.Ed. 645 (1912) (all describing Wallace as an example of contributory infringement).

. Br. of Amicus Curiae Elec. Frontier Found, in Supp. of Def. at 6-8, Akamai, 692 F.3d 1301 (Fed.Cir. Aug. 9, 2011) (available at 2011 WL 3796789) ("EFF Br.”); Corrected Br. of Amici Curiae Cisco Sys., Inc. et al. in Supp. of Def.-Cross-Appellant at 4-5, Akamai, 692 F.3d 1301 (Fed.Cir. Aug. 15, 2011) {available at 2011 WL 4438649) ("Cisco Br.”); Executive Office of the President, Patent Assertion and U.S. Innovation, at 10-12 (June 2013); Gaia Bernstein, The Rise of the End User in Patent Litigation, 55 B.C. L.Rev. 1443, 1443-46 (2014); Brian Love & James Yoon, Expanding Patent Law’s Customer Suit Exception, 93 B.U. L.Rev. 1605, 1610-11 (2013).

. See, e.g., Br. of Amici Curiae Newegg and L.L. Bean in Supp. of Pet’r at 18-22, Limelight, 134 S.Ct. 2111 (Feb. 28, 2014) (available at 2014 WL 880929); Br. of Amici Curiae Cargill, Inc. et al. in Supp. of Pet’r Limelight Networks, Inc. at 8-10, Limelight, 134 S.Ct. 2111 (Mar. 3, 2014) {available at 2014 WL 880935); Cisco Br. at 4-7.

. EFF Br. at 5; Br. of Amicus Curiae The Financial Services Roundtable in Supp. of Limelight Networks, Inc. and Affirmance at 27, Akamai, 692 F.3d 1301 (Fed.Cir. Aug.15, 2011) (available at 2011 WL 7730148).